IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE CLYDE BURLESON, | No. C 08-01853 SBA (PR) |
| Petitioner, | **ORDER GRANTING RESPONDENT'S MOTION TO DISMISS PETITION AS UNTIMELY** |
| v. | |
| CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, | (Docket no. 11) |
| Respondent. | |

Petitioner Jesse Clyde Burleson, a state prisoner, filed the instant pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Before the Court is Respondent's motion to dismiss on the ground that the petition is time-barred under 28 U.S.C. § 2244(d), the statute of limitations set by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Petitioner opposes the motion. He alleges that despite his untimeliness, he is still entitled to argue the merits of the claims in his petition under the "actual innocence" exception to the AEDPA's one-year statute of limitations for filing a habeas petition in federal court. 28 U.S.C. § 2244(d)(1). Respondent filed a reply to Petitioner's opposition.

Having considered all of the papers filed by the parties, the Court GRANTS Respondent's motion to dismiss.

**BACKGROUND**

At a 1988 jury trial, Petitioner presented a misidentification defense to the charge of murder. Despite ample evidence that he was the shooter, and that he acted under the belief at the time of the shooting that men were coming to kill him, Petitioner's counsel proceeded with a misidentification defense, which precluded the introduction of evidence and the jury instruction on imperfect self-defense. (Pet. at 6a-6f,[1] Ex. A10; Reply at 2, 4.) Petitioner was convicted of second degree murder

---

[1] Petitioner filled out the Court's habeas petition form and to page six of the form, he attached "inserted" pages outlining his claims for relief. The Court has renumbered these six "inserted" pages as "6a" through "6f."

and was sentenced to twenty-five years to life in state prison. (Resp't Ex. A at 1.) On February 28, 1989, the California Court of Appeal affirmed the judgment. (Resp't Ex. A at 3.) Petitioner did not seek review in the California Supreme Court.

Petitioner has filed numerous habeas petitions in state court between 1991 and the filing of the present federal petition on March 22, 2008.[2] (Resp't Exs. B-V.)

## **DISCUSSION**

The AEDPA, which became law on April 24, 1996, imposes a statute of limitations on petitions for the writ of habeas corpus filed by state prisoners. Petitions filed by prisoners challenging non-capital state convictions or sentences must be filed within one year of the latest of the date on which: (1) the judgment became final after the conclusion of direct review or the time passed for seeking direct review; (2) an impediment to filing an application created by unconstitutional state action was removed, if such action prevented petitioner from filing; (3) the constitutional right asserted was recognized by the Supreme Court, if the right was newly recognized by the Supreme Court and made retroactive to cases on collateral review; or (4) the factual predicate of the claim could have been discovered through the exercise of due diligence. See 28 U.S.C. § 2244(d)(1).

The one-year period generally runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). If a petitioner could have sought review by the state court of appeals or the state supreme court, but did not, the limitation period will begin running against him the day after the date on which the time to seek such review expired. See Smith v. Duncan, 297 F.3d 809, 812-13 (9th Cir. 2002) (limitation period began running day after time to seek discretionary review of California

---

[2] A pro se federal or state habeas petition is deemed filed on the date it is delivered to prison authorities for mailing. See Saffold v. Newland, 250 F.3d 1262, 1268 (9th Cir. 2000), vacated and remanded on other grounds, Carey v. Saffold, 536 U.S. 214 (2002) (holding that a federal or state habeas petition is deemed filed on the date the prisoner submits it to prison authorities for filing, rather than the date it is received by the courts). March 22, 2008 is the date Petitioner's federal habeas petition was signed and the earliest date that the petition could have been delivered to prison authorities for mailing; therefore, it will be deemed filed on that date.

2

Court of Appeal's decision in the California Supreme Court expired, which was forty days after the Court of Appeal filed its opinion) (citing Cal. Rules of Ct. 24(a), 28(b), 45(a); Cal. Civ. Proc. Code § 12a). In this case, Petitioner's conviction became final on April 10, 1989, the day after the forty-day time frame to file a petition for review in the California Supreme Court had expired. See id. Accordingly, his petition filed on March 22, 2008 -- nineteen years after the conviction became final -- is untimely.

Because Petitioner concedes that the petition is untimely (opp'n at 2), the Court need not address whether he is entitled to statutory or equitable tolling.[3] Therefore, the only issue for the Court's consideration is whether Petitioner's claim fits within the "actual innocence" exception to the AEDPA's one-year statute of limitations. 28 U.S.C. § 2244(d)(1).

The "actual innocence" gateway established in Schlup v. Delo, 513 U.S. 298 (1995), may be available to a petitioner whose petition is otherwise barred by the AEDPA's limitations period. See Majoy v. Roe, 296 F.3d 770, 776-77 (9th Cir. 2002) (implying that unavailability of "actual innocence" gateway would raise serious constitutional concerns and remanding to district court for a determination of whether actual innocence claim was established before deciding whether gateway is available under AEDPA). For purposes of this Order, the Court will assume that the "actual innocence" exception, if established according to the Schlup standard, would avoid the statute of limitations bar.

The "actual innocence" or "miscarriage of justice" exception arose in the context of procedural bars: If a state prisoner cannot meet the cause and prejudice standard to escape a

---

[3] Statutory tolling occurs when the AEDPA's one-year limitations period is tolled under § 2244(d)(2) for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). Meanwhile, the Supreme Court has "never squarely addressed the question whether equitable tolling is applicable to AEDPA's statute of limitations," Pace v. DiGuglielmo, 544 U.S. 408, 418 n.8 (2005), but the Ninth Circuit holds that the one-year limitation period can be equitably tolled because § 2244(d) is a statute of limitations and not a jurisdictional bar. Calderon v. United States District Court (Beeler), 128 F.3d 1283, 1288 (9th Cir. 1997), overruled in part on other grounds by Calderon v. United States District Court (Kelly), 163 F.3d 530 (9th Cir. 1998) (en banc).

procedural bar, a federal court may still hear the merits of the successive, abusive or procedurally defaulted claims if failure to hear the claims would constitute a "miscarriage of justice." See Sawyer v. Whitley, 505 U.S. 333, 339-40 (1992) (citations omitted); see also Majoy, 296 F.3d at 776-77. However, the "actual innocence" exception is intended as a "'safety valve' for the 'extraordinary case[.]'" Schlup, 513 U.S. at 333 (O'Connor, J., concurring) (citation omitted).

The "actual innocence" exception is a "very narrow" one. Sawyer, 505 U.S. at 341. The Supreme Court accordingly limits this exception to habeas petitioners who can show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup, 513 U.S. at 327 (citing Murray v. Carrier, 477 U.S. 478, 496 (1986)); see, e.g., Wildman v. Johnson, 261 F.3d 832, 842-43 (9th Cir. 2001) (petitioner must establish factual innocence in order to show that fundamental miscarriage of justice would result from application of procedural default). Under this exception, a petitioner may establish a procedural "gateway" permitting review of defaulted claims if he or she demonstrates "actual innocence." Schlup, 513 U.S. at 316, n.32. Thus,

> [i]f a petitioner . . . presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of non-harmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claim.

Id. at 316.

"To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." Schlup, 513 U.S. at 324. The "new" evidence need not be newly available, just newly presented -- that is, evidence that was not presented at trial. Griffin v. Johnson, 350 F.3d 956, 961 (9th Cir. 2003).

It is not enough that the new evidence show the existence of reasonable doubt; rather, petitioner must show "that it is more likely than not that no 'reasonable juror' would have convicted him." Schlup, 513 U.S. at 329; see also Van Buskirk v. Baldwin, 265 F.3d 1080, 1084 (9th Cir. 2001). Thus, "actual innocence" means factual innocence, not merely legal insufficiency. Bousley v. United States, 523 U.S. 614, 623-24 (1998) (citing Sawyer, 505 U.S. at 339).

4

A petitioner need not always affirmatively show physical evidence that he or she did not commit the crime. Gandarela v. Johnson, 286 F.3d 1080, 1086 (9th Cir. 2002). A petitioner may pass through the Schlup gateway by producing evidence "that significantly undermines or impeaches the credibility of witnesses presented at trial, if all the evidence, including new evidence, makes it 'more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" Id. (quoting Schlup, 513 U.S. at 327).

Here, Petitioner offers the declaration of Dywayne Richardson, who was with Petitioner during the course of the day on which the murder took place, September 27, 1987. (Pet'r Ex. A10.) Richardson states that "[o]n September 27, 1987, [he] watched Charles Harris aka Little Charles assault [Petitioner] . . . ," after which Harris "threatened [Petitioner] that he was going to kill him." (Id.) Richardson later saw Harris talking with several men, including "James Jackson aka JJ and Clarence Stevenson aka Popeye." (Id.) Richardson states that "[i]t appeared to [him] that [Harris] gave a handgun to one of the men," and that "[i]t was [his] belief that [Harris] was going to have these men kill [Petitioner]." (Id.) Richardson claims that "[s]hortly thereafter [he] told [Petitioner] what [he] had seen and that [he] believed that they were coming to kill [Petitioner]." (Id.)

According to the petition, Petitioner armed himself after speaking with Richardson, in anticipation of the men from Harris's "crew" coming to Petitioner's apartment to kill him. (Pet. at 6b.) At approximately 11 p.m., Petitioner encountered Mark Ellis, one of the men from Harris's "crew," along with the rest of the men "directly outside the entrance gate of Petitioner's apartment building . . . ." (Id.) Petitioner "panicked, drew his gun, and started firing." (Id.) He "shot Ellis at point blank range and fired rounds at the other men as they fled, hitting Stevenson twice, one shot fatally wounding him." (Id.) Petitioner then fled from the scene.

Petitioner offers Richardson's declaration as new evidence, in the sense that it was not introduced at trial, and that it establishes that Petitioner acted in imperfect self-defense when he killed Stevenson. Petitioner further asserts, implicitly, that in light of this evidence, no reasonable juror could find him guilty of second degree murder. He alleges that the underlying constitutional violation is the trial court's failure to instruct the jury on imperfect self-defense as negating the

5

malice element of murder. See CALJIC No. 5.17, 8.50.

Respondent argues the following: (1) that Petitioner's proffered evidence points to his legal, not his factual innocence (reply at 2-4); (2) that even with the proffered evidence, he cannot meet the no reasonable juror standard (id. at 4-5); (3) that the proffered evidence is not new (id. at 6); (4) that the proffered evidence is not reliable (id. at 5); and (5) that Petitioner fails to show any diligence in presenting it (id. at 6). While there are serious questions both about the reliability of the proffered evidence and about the reasons why it was not produced earlier, the Court need only address the first of Respondent's arguments as it is dispositive of whether the "actual innocence" exception applies to Petitioner.

Both parties agree that the question of law here is whether or not a claim of actual innocence of the crime of which one was convicted, and conceding guilt of a lesser included offense, is covered by the term "actual innocence" or "factual innocence." Bousley, 523 U.S. at 623-24. The Ninth Circuit distinguished actual innocence from legal innocence, stating: "The required evidence must create a colorable claim of actual innocence, that the petitioner 'is innocent of the charge for which he [is] incarcerated,' as opposed to legal innocence as a result of legal error." Gandarela, 286 F.3d at 1085 (citations omitted). The Ninth Circuit case that Respondent cites, Jackson v. Calderon, 211 F.3d 1148, 1165 (9th Cir. 2000), involves a freestanding "actual innocence" claim in a capital case, and leaves open the question mentioned above.[4] However, the Tenth Circuit has dealt with this question directly. In Beavers v. Saffle, the Tenth Circuit held that a petitioner's argument that he acted in self-defense, and therefore was innocent of murder, went toward establishing his legal innocence, rather than his factual innocence as required under the "actual innocence" exception. 216 F.3d 918, 923 (10th Cir. 2000) (citing Herrera, 506 U.S. at 398-408). Like the petitioner in Beavers, Petitioner in the instant case argues that because he acted in imperfect self-defense, he is innocent of murder. Petitioner admits to having committed the killing, but maintains that the offense should

---

[4] The applicable standard for a freestanding claim of actual innocence is more rigorous than that applicable here, where Petitioner alleges a constitutional deprivation at trial. See Jackson, 211 F.3d at 1164-65 (citing Herrera v. Collins, 506 U.S. 390, 398-408 (1993)).

have been voluntary manslaughter instead of second degree murder, based on a theory of imperfect self-defense. The Tenth Circuit's reasoning in Beavers is fully applicable here. This Court finds Petitioner's claim to be closer to establishing his legal innocence, rather than his factual innocence. Therefore, Petitioner does not raise a proper claim that fits within the "actual innocence" exception because he merely claims legal insufficiency. See Bousley, 523 U.S. at 623-24.

Furthermore, Richardson's declaration is not the sort of evidence that would disturb the Court's confidence in the outcome of Petitioner's trial, as mandated under the Schlup standard. 513 U.S. at 329. Petitioner has failed to present evidence that makes it "more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." Id. Instead, Petitioner proffers evidence which supports a theory of imperfect self-defense as opposed to a misidentification defense, which was presented at trial. He claims that "Richardson's testimony was excluded from Petitioner's trial due to defense counsel making a pre-investigative decision, based on counsel's reading of the police reports, to present a misidentity [sic] defense, and because of counsel's overall failure to conduct an investigation of petitioner's desired defense of unreasonable self-defense." (Opp'n at 6.) This is a serious allegation of ineffective assistance of trial counsel, but, if true, it represents a procedural error, not Petitioner's actual innocence. As mentioned above, in order to enter the "actual innocence" gateway, Petitioner must show factual innocence, not merely a procedural error leading to legal insufficiency. See Bousley, 523 U.S. at 623-24.

The proffered evidence is not persuasive enough to meet the high bar set out to restrict access to this drastic exception to AEDPA's time bar because the evidence fails to make it "more likely than not that no 'reasonable juror' would have convicted [Petitioner]." Schlup, 513 U.S. at 329. Accordingly, the Court finds that the "actual innocence" exception does not apply to Petitioner; therefore, his petition is barred as untimely.

## **CONCLUSION**

For the foregoing reasons, Respondent's motion to dismiss the petition as untimely (docket no. 11) is GRANTED. This action is DISMISSED WITH PREJUDICE. The Clerk of the Court shall terminate all pending motions, enter judgment, and close the file.

This Order terminates Docket no 11.

IT IS SO ORDERED.

DATED: 9/9/09

_Saundra B Armstrong_
SAUNDRA BROWN ARMSTRONG
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

JESSE CLYDE BURLESON,

    Plaintiff,

v.

DIRECTOR CA DEPT OF CORRECTIONS et al,

    Defendant.
_____/

Case Number: CV08-01853 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on September 10, 2009, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Jesse Clyde Burleson D-90284
Mule Creek State Prison
P.O. Box 409020
Ione, CA 95640

Dated: September 10, 2009

    Richard W. Wieking, Clerk
    By: LISA R CLARK, Deputy Clerk